CITY OF EVERETT vs. LOCAL 1656, INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS & another.[1]

Middlesex. October 7, 1991. - December 9, 1991.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Municipal Corporations*, Group insurance. *Labor*, Health benefit plan. *Contract*, Collective bargaining contract. *Jurisdiction*, Declaratory relief. *Administrative Law*, Exhaustion of remedies, Agency's authority.

In an action by an employer against a union seeking a declaration as to the appropriateness of a payroll deduction pursuant to G. L. c. 32B, § 16, as amended by St. 1989, c. 653, § 37, for health maintenance organization coverage, where the precise issue between the parties concerned the meaning of certain provisions of their collective bargaining agreement in light of the "grandfather" provision of St. 1989, c. 653, § 218, the judge properly exercised his discretion, guided by principles underlying the exhaustion of remedies doctrine, to remit the parties to the Labor Relations Commission for resolution of their dispute in agency proceedings that the union had commenced before the declaratory action was brought. [365-370]

CIVIL ACTION commenced in the Superior Court Department on August 6, 1990.

The case was heard by *Thomas E. Connolly*, J., on a motion to dismiss.

The Supreme Judicial Court granted a request for direct appellate review.

*Norman Holtz* for the plaintiff.
*William Lafferty* for the defendants.
*Theresa M. Dowdy*, for International Brotherhood of Police Officers, Locals 633 and 634, amicus curiae, submitted a brief.

---

[1] The president of the defendant union. We acknowledge the brief, amicus curiae, filed by the International Brotherhood of Police Officers, Locals 633 and 634.

GREANEY, J. The plaintiff, the city of Everett (city), filed a complaint in the Superior Court against the defendant, Local 1656, International Union of Firefighters (union), and its president. In the complaint, the city sought a declaration pursuant to G. L. c. 231A (1990 ed.) that it could deduct, pursuant to G. L. c. 32B, § 16, as amended by St. 1989, c. 653, § 37, ten per cent of the monthly premium cost for health maintenance organization (HMO) coverage furnished to union members without violating its collective bargaining agreement with the union. When the city's Superior Court action was brought, there was pending before the State Labor Relations Commission (commission), a complaint concerning the city's unilateral application of St. 1989, c. 653, § 37, to union employees covered by the collective bargaining agreement. A judge of the Superior Court allowed the union's motion to dismiss the city's complaint filed pursuant to Mass. R. Civ. P. 12, 365 Mass. 755 (1974), and ordered the city and the union "to proceed to litigate the underlying dispute at the Labor Relations Commission." The city appealed, and we allowed its application for direct appellate review. We now affirm the judgment of dismissal.

General Laws c. 32B, § 3, authorizes a governmental unit to offer health insurance to its employees, and G. L. c. 32B, § 16, inserted by St. 1971, c. 946, § 5, permits a governmental unit to offer HMO membership as an alternative to group-indemnity health insurance coverage. Prior to July 1, 1990, § 16 provided, in substance, that a governmental unit's contributions towards the premium costs for HMOs were to be the same amount as the unit's contributions for group-indemnity health insurance programs (such as, for example, Blue Cross/Blue Shield insurance).[2] For several years prior to July 1, 1990, the city's total cost of HMO coverage was

---

[2]In *Hemman* v. *Harvard Community Health Plan, Inc.,* 18 Mass. App. Ct. 70, 72-73 (1984), it was held that G. L. c. 32, § 16, as amended by St. 1976, c. 454, § 2, required a governmental unit to contribute toward the premium charged by an HMO the same *dollar* amount as the unit contributed to the premium for group-indemnity coverage, rather than an equal *percentage* of the premium charged by the group-indemnity plan.

less than the city's contribution to Blue Cross/Blue Shield. Because of this, union employees who chose HMO coverage were not required to contribute to the cost of the premiums for their coverage.

General Laws c. 32B, § 16, was amended by St. 1989, c. 653, § 37, to require that an employee choosing HMO coverage pay a "minimum of ten per cent of the total monthly premium cost" for his or her coverage. However, under St. 1989, c. 653, § 218, where the amount of an employee's contribution for health care benefits is determined by a collective bargaining agreement, the amount of the contribution is not to be changed until the expiration date of the agreement unless the parties to the agreement agree otherwise.

The city and the union have been parties to successive collective bargaining agreements since about 1974. Article 14.1 of the pertinent collective bargaining agreement provides that the city will maintain in effect for the duration of the agreement the following programs of insurance:

> "Blue Cross/Blue Shield Municipal Master Medical Plan in effect on July 1, 1974 or its equivalent. If greater benefits are adopted for other City employees, such increased benefits shall be granted to employees under this Agreement."

Article 14.1 also provides that "[t]he contribution of the employee to the premiums for [health and other] insurance programs shall be fixed as of July 1, 1974 and all increases thereafter shall be borne by the City."

In a memorandum dated May 14, 1990, the city announced that, on July 1, 1990, the effective date of St. 1989, c. 653, § 37, all bargaining unit employees covered by a HMO would be required to contribute a minimum of ten per cent toward the monthly premium costs.[3] On May 14, 1990, the union filed a charge with the commission alleging that

---

[3]The city's complaint in the Superior Court indicates that the city has been collecting the ten per cent from employees covered by HMOs since July 1, 1990.

the city had engaged in a prohibited practice by "unilaterally deducting ten per cent of the HMO cost in direct violation of its duty to bargain under § 10 (*a*) (5) of G. L. c. 150E." The union also alleged that the city had violated G. L. c. 150E, § 10 (*a*) (5) (1991 ed.), by repudiating the terms and conditions of the collective bargaining agreement pertaining to the city's obligations to pay premiums for health care benefits.

On July 20, 1990, the commission issued a formal complaint, alleging that the city, among other things, had committed prohibited practices by refusing to bargain over the ten per cent contribution and by repudiating art. 14.1 of the collective bargaining agreement. The commission set a date of February 1, 1991, for a formal hearing on the complaint.[4] The city thereafter commenced its action in the Superior Court.

The city's complaint alleges that, since at least 1974, it has offered its employees under G. L. c. 32, §§ 3 and 16, a choice between Blue/Cross Blue Shield and health care benefits provided by various HMOs, and that, before the amendment to § 16 adopted in St. 1989, c. 653, § 37, employees who elected coverage with a designated HMO were able to do so without cost. The complaint asserts that St. 1989, c. 653, § 37, requires the city to assess and charge its employees ten per cent of any premium for HMO coverage. The complaint also points out that the union relies upon the grandfather provision contained in St. 1989, c. 653, § 218, to claim that the ten per cent charge cannot be imposed under art. 14.1 and other provisions of the collective bargaining agreement, at least until the expiration of that agreement (June 30, 1991). The city's complaint goes on to assert that because of the union's position "[t]here is a possible conflict between []§ 37 and []§ 218 of [c.] 653 of the Acts of 1989," which has created a controversy between the parties that requires,

_____

[4]According to the union, the hearing before the commission went ahead as scheduled and testimony and documentary evidence were received. The commission is currently considering the issues before it and has decided to issue its decision directly rather than by a hearing officer so that the decision will be immediately reviewable under G. L. c. 150E, § 11 (1990 ed.).

among other things, "a determination of the construction or interpretation of the parties' collective bargaining agreement as that agreement applies to G. L. c. 32B, § 16 as most recently amended." The complaint then requests declaratory and other relief to the effect that art. 14.1, and other pertinent provisions of the collective bargaining agreement, cannot be relied upon to postpone collection from the union's employees of the ten per cent premium charge for HMO benefits because art. 14.1 is silent as to HMO coverage or contribution.

It is apparent from the facts set forth in the city's complaint that a declaration of the meaning of § 16, as amended by St. 1989, c. 653, § 37, is probably unnecessary to resolve the controversy. That statute unambiguously provides that employees of a governmental unit who have HMO coverage shall pay a minimum of ten per cent of the total monthly premium cost or rate for such coverage with the governmental unit responsible for paying the remainder of the monthly cost.[5] The dispute between the parties also does not appear directly to concern the meaning of the grandfather provision contained in St. 1989, c. 653, § 218. That statute is likewise unambiguous in providing protection from the effect of § 37 to employees whose health care contributions are determined by an existing collective bargaining agreement.[6] The precise

---

[5]The statute goes on to provide that the parties to a collective bargaining agreement under G. L. c. 150E can agree to a higher percentage of employee payment not to exceed a maximum of fifty per cent of the total monthly HMO premium cost or rate.

[6]Statute 1989, c. 653, § 218, reads, in pertinent part, as follows:

"Notwithstanding the provisions of said third paragraph of section sixteen of chapter thirty-two of the General Laws, the percent contribution to the total monthly premium cost or rate for coverage under said section sixteen for any employees of any governmental unit where such percent contribution is determined by a collective bargaining agreement as of the effective date of this act shall not be altered until the expiration date of said collective bargaining agreement, unless the parties to said agreement agree otherwise, and in no event shall the provisions of said section sixteen be construed to require any governmental unit to reduce the percent share contributed to such coverage by its employees below the percent share con-

dispute between the parties concerns the meaning of art. 14.1 of the collective bargaining agreement in light of § 218 — do the words in art. 14.1 "or its equivalent," when used in conjunction with, and after reference to, the city's "Blue Cross/ Blue Shield Municipal Master Medical Plan in effect on July 1, 1974," include an HMO, so as to make the collective bargaining agreement subject to the protection of § 218?

In enacting St. 1989, c. 653, §§ 37 and 218, the Legislature was undoubtedly aware of the following: (a) that there was no prior legislative authorization mandating contribution from employees for the cost of HMO premiums; (b) that existing collective bargaining agreements were likely to contain provisions which required governmental units to contribute on an equal dollars basis, see note 2, *supra*, to the payment of premium costs for both group indemnity and HMO plans; (c) that some protection for these provisions was necessary to avoid a claim that the new assessment authorized by § 37 unlawfully impaired rights protected by existing collective bargaining agreements; and (d) that there could be myriad variations in existing collective bargaining agreements concerning employee health care benefits and payment of the premiums therefor which could require interpretation.

In light of these considerations, it would be unreasonable to expect the courts to resolve all of the potentially large number of disputes over the scope and meaning of particular provisions in G. L. c. 150E collective bargaining agreements pertaining to HMO coverage, particularly where such disputes could, in many cases, be more practically adjusted by alternative procedures such as negotiations between the parties, resort to the dispute resolution mechanisms contained in the agreements, or application to the commission for a remedy within the commission's jurisdiction.

---

tributed as of the effective date of this section until such time as a different percent contribution is in fact determined by a collective bargaining agreement and such collective bargaining agreement becomes effective."

Here, the union appears properly to have sought the commission's intervention to decide whether the city had prematurely implemented § 37 of c. 653 of St. 1989, in light of the parties' collective bargaining agreement and the protections afforded by § 218 of the same statute. The proceeding before the commission, already far advanced, will likely resolve that dispute. In view of the pendency of that proceeding, the union argues that the requirement that aggrieved parties exhaust their administrative remedies before resorting to litigation applies and justifies the trial court's refusal to issue a declaration. See *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 220 (1979); *Barksdale* v. *Director of the Div. of Employment Sec.*, 397 Mass. 49, 52 (1986). Because the city, as the party seeking a declaratory judgment, is not a party "to whom an administrative remedy is available," *id.*, the case is not one strictly governed by the exhaustion doctrine. Nevertheless, we think the policy considerations underlying that doctrine support the denial of declaratory relief.

In *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 450-451 (1973), we stated that "[w]hile [G. L.] c. 231A was intended as remedial legislation, giving a party a new and additional procedure for resolving controversies . . . there is no indication that it was intended as an automatic substitute for administrative proceedings" (citation omitted). In *East Chop*, declaratory relief was ruled to be inappropriate where the Legislature had given an administrative agency broad powers to receive, investigate and act on certain complaints, and proceedings involving the party bringing the declaratory action were already pending before the agency. In such circumstances, we held that it would be inappropriate to "permit[] the court's judgment to be substituted for the commission's on issues that lie within the latter's designated field." *Id.* at 450. This rationale has application here. In G. L. c. 150E, § 11, the Legislature gave the commission broad powers to investigate and act on complaints such as the one now before it, and an inquiry has already begun. The issues framed by

the commission's investigation and complaint will likely call upon the commission to interpret art. 14.1, and other provisions, of the parties' collective bargaining agreement. This issue of interpretation is clearly at the core of the city's complaint in the Superior Court, and its resolution appears suitable for administrative fact finding by the commission on such matters as the parties' intent when they bargained the agreement and prior practices for HMO coverage. The commission is thus being called upon to fulfil a traditional role, as to which it possesses special expertise.[7]

Moreover, factors traditionally cited in favor of suspending the exhaustion requirement are inapplicable to this case. The administrative remedy available here is not inadequate, see *United States* v. *Anthony Grace & Sons, Inc.*, 384 U.S. 424, 429-430 (1966). Indeed, a decision by the commission may well terminate the entire controversy.[8] The facts of this case do not "raise important public questions whose resolution concerns or will affect more persons than the parties to the case." *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination, supra* at 450. No irreparable injury to either party will result from pursuing the administrative remedy. There is no question of law peculiarly within judicial competence; nor will the administrative proceeding be expensive or awkward as compared to a judicial disposition of the

---

[7]Illustrative cases on the commission's role in deciding prohibited practices complaints involving interpretation of collective bargaining agreements and past practices of employers may be seen in *City of Boston*, 3 M.L.C. 1450 (1977); *City of Cambridge*, 5 M.L.C. 1291 (1978); *Board of Regents of Higher Educ.*, 9 M.L.C. 1799 (1983).

While it appears at this point that the commission will not need to interpret St. 1989, c. 653, §§ 37 and 218, in order to decide the complaint before it, the commission has authority to make an interpretation of the statute if necessary.

[8]The commission has authority under G. L. c. 150E, § 11 (1990 ed.), to order a party, found after hearing to have violated the law, to cease and desist and to take such affirmative action as will comply with the law. This provision has been broadly construed to permit the commission to "restore the situation as nearly as possible to that which would have existed but for the unfair labor practice." *Labor Relations Comm'n* v. *Everett*, 7 Mass. App. Ct. 826, 831 (1979).

case. See 4 K.C. Davis, Administrative Law 414-415 (2d ed. 1983).

Although G. L. c. 231A, § 9 (1990 ed.), provides that the declaratory relief statute must be broadly construed and administered, under § 3 of that statute a judge has discretion to decline to grant declaratory relief if persuaded that it will not serve a useful purpose. "[T]he court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal . . . or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration." Borchard, Declaratory Judgments 302 (1941). On the facts of this case, we conclude that the judge had "sufficient reason," within the meaning of G. L. c. 231A, § 3, and did not abuse his discretion in refusing to enter a declaratory judgment.[9] Based on the pending proceedings before the commission, and in the interests of avoiding possibly conflicting results and promoting judicial economy, the judge properly could decline to involve the court under G. L. c. 231A in a dispute better left to resolution by an agency with expertise in the area.[10]

---

[9] General Laws c. 231A, § 3 (1990 ed.), provides, in pertinent part: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings or for other sufficient reasons. The reasons for such refusal shall be stated in the record."

A motion to dismiss is proper where the court refuses to enter a declaratory judgment for a reason set forth in G. L. c. 231A, § 3. See *Rogers* v. *Commissioner of Correction*, 25 Mass. App. Ct. 399, 401 (1988). We view the judge's order to the parties "to proceed to litigate the underlying dispute at the Labor Relations Commission," as the basis for his exercise of discretion under § 3.

[10] The decisions relied upon by the city do not support an opposite conclusion. In *Uniformed Firefighters of Ludlow, Local 1840* v. *Selectmen of Ludlow*, 29 Mass. App. Ct. 901, 903 (1990), the Appeals Court noted that, while there was a prohibited practice complaint pending before the commission, the declaratory judgment case before the Superior Court involved "[o]nly questions of law . . . [and] no issue relating to the conduct of labor relations or the interpretation of a collective bargaining agreement

The judgment dismissing the city's complaint and instructing the parties to proceed to litigate before the Labor Relations Commission is affirmed.

*So ordered.*

which might be appropriate for exercise in the first instance of the commission's expertise." Similarly, the issue in *Ludlow Educ. Ass'n* v. *Ludlow*, 31 Mass. App. Ct. 110, 115-116 (1991), did not involve the conduct of labor relations or interpretation of the terms of a collective bargaining agreement. Neither of these cases required the judge to take the case on its merits rather than deferring its resolution to the commission.