CITY OF EVERETT *vs.* LABOR RELATIONS COMMISSION.

Suffolk. November 1, 1993. - December 17, 1993.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Labor Relations Commission. Municipal Corporations*, Group insurance, Collective bargaining. *Labor*, Health benefit plan. *Contract*, Collective bargaining contract.

A complaint issued by the Labor Relations Commission and authorized by two commissioners (a quorum) during their terms in office was issued in conformity with G. L. c. 150E, § 11, and there was no merit to a claim that the commission had no jurisdiction to proceed on the complaint because one of the commissioners had resigned between the date the complaint was authorized and the date it issued. [623-624]

In a dispute heard by the Labor Relations Commission involving the interpretation of the health coverage cost terms of a municipal collective bargaining agreement, the commission correctly concluded that the city had committed a prohibited practice in failing to bargain over increased employee contributions for certain health coverage and the commission's decision was based on substantial evidence. [624-627]

A union properly filed a charge with the Labor Relations Commission with respect to an issue covered by an existing collective bargaining agreement and the union had no duty to bargain with the city over that issue during the term of the agreement. [627]

APPEAL from a decision of the Labor Relations Commission.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Norman Holtz* for the plaintiff.

*John B. Cochran* for the defendant.

*Sean Lafferty & William Lafferty*, for Everett Firefighters, Local 1656, I.A.F.F., amicus curiae, submitted a brief.

GREANEY, J. The city of Everett (city) appeals, under G. L. c. 150E, § 11 (1992 ed.), from a decision of the Labor Relations Commission (commission), which found that

the city had violated G. L. c. 150E, § 10 (*a*) (1) & (5) (1992 ed.), by unilaterally requiring the members of Local 1656, International Association of Firefighters (union), to contribute ten per cent of the monthly premium cost for their health maintenance organization (HMO) coverage. The city claims that (1) the commission's complaint was invalid because one of the two commissioners whose signature appears on the complaint had resigned prior to signing it; (2) the commission's decision was not supported by substantial evidence; and (3) the union had waived its right to bargain over the increase. We transferred the case to this court on our own motion. We reject the city's arguments and affirm the commission's decision.

The case involves a collective bargaining agreement between the city and the union which was in effect between July 1, 1988, and June 30, 1991. Article 14 of the agreement, entitled "Insurance," provided in relevant part, as follows: "14.1 The City agrees to maintain in effect for the duration of this Agreement the following programs of insurance: (a) Blue Cross/Blue Shield Municipal Master Medical Plan in effect on July 1, 1974 or its equivalent. . . . The contribution of the employee to the premiums for the above insurance programs shall be fixed as of July 1, 1974 and all increases thereafter shall be borne by the City."

Since 1974, the city has given union members the choice of a traditional indemnity-type plan (Blue Cross/Blue Shield) or health maintenance organization (HMO) coverage.[1] For the employees who choose the Blue Cross/Blue Shield plan, the employee's contribution to the premium is $15.08 per month for individual coverage and $40.20 per

---

[1]General Laws c. 32B, § 3 (1992 ed.), authorizes a governmental unit to offer health insurance to its employees, and G. L. c. 32B, § 16, inserted by St. 1971, c. 946, § 5, permits a governmental unit to offer HMO membership as an alternative to group indemnity health insurance coverage.

From 1974 to 1978, the only HMO coverage offered by the city was the Harvard Community Health Plan. Since 1978, however, union members also have had the choice of HMO coverage through Bay State Health Care.

month for family coverage. As provided in art. 14, the employee's cost has remained the same since 1974. Employees who choose HMO coverage, on the other hand, are required to pay the difference between the total premium for their HMO coverage and the amount of the city's contribution for each employee covered by the Blue Cross/Blue Shield plan. For several years prior to July 1, 1990, the city's cost for an individual's HMO coverage was less than the city's contribution to an individual's Blue Cross/Blue Shield coverage. As a result, union members who chose HMO coverage were not required to contribute to the cost of the premiums for their coverage.[2]

General Laws c. 32B, § 16, was amended by St. 1989, c. 653, § 37, to require that an employee choosing HMO coverage pay a "minimum of ten per cent of the total monthly premium cost" for his or her coverage. However, under St. 1989, c. 653, § 218, where the amount of an employee's contribution for health care benefits is determined by a collective bargaining agreement, the amount of the contribution is not to be changed until the expiration date of the agreement unless the parties to the agreement agree otherwise.

In a memorandum dated May 14, 1990, the city announced that, on July 1, 1990, the effective date of St. 1989, c. 653, § 37, all bargaining unit employees covered by an HMO would be required to contribute a minimum of ten per cent toward the monthly premium costs. On May 14, 1990, the union filed a charge with the commission alleging that the city had engaged in a prohibited practice by "unilaterally deducting ten per cent of the HMO cost in direct violation of its duty to bargain under § 10 (*a*) (5) of G. L. c. 150E." The union also alleged that the city had violated G. L. c. 150E, § 10 (*a*) (5) (1992 ed.), by repudiating the terms and

---

[2]In *Hemman* v. *Harvard Community Health Plan, Inc.*, 18 Mass. App. Ct. 70, 72-73 (1984), it was held that G. L. c. 32B, § 16, as amended by St. 1976, c. 454, § 2, required a governmental unit to contribute toward the premium charged by an HMO the same dollar amount as the unit contributed to the premium for group-indemnity coverage, rather than an equal percentage of the premium charged by the group-indemnity plan.

conditions of the collective bargaining agreement pertaining to the city's obligations to pay premiums for health care benefits.

On July 20, 1990, the commission issued a formal complaint, alleging that the city, among other things, had committed prohibited practices by refusing to bargain over the ten per cent contribution and by repudiating art. 14.1 of the collective bargaining agreement. The commission's chief counsel, acting as a hearing officer, conducted an evidentiary hearing, and on August 20, 1991, made recommended findings of fact.[3] On August 24, 1992, the commission accepted the hearing officer's findings of fact (with minor alterations), entered its decision which concluded that the city had violated G. L. c. 150E, § 10 (a) (1) and (5), and ordered relief on the part of the city.

1. As has been mentioned, the commission's complaint was issued on July 20, 1990. The complaint was signed by a commissioner and a former commissioner who had resigned her position on July 14, 1990, six days earlier. Both, however, had voted to authorize the complaint before July 14. The commission notified the parties by letter dated June 29, 1990, that the issuance of a complaint had been authorized by the commission, and a further notice indicating that the complaint was authorized before July 14, 1990, was attached to the complaint. The city argues that, because one of the commissioners who signed the complaint had resigned prior to July 20, 1990, the complaint and all subsequent proceedings before the commission are invalid.

The argument lacks merit. The commission is an agency established under G. L. c. 23, § 9 O (a) (1992 ed.), which

---

[3]The city attempted to have the dispute judicially resolved when it filed an action against the union in the Superior Court seeking a declaration that its requirement of employee contributions under G. L. c. 32B, § 16, as amended by St. 1989, c. 653, § 37, was lawful notwithstanding article 14.1 and the statute's "grandfather" provision. In *Everett* v. *Local 1656, Int'l Ass'n of Firefighters*, 411 Mass. 361 (1991), we upheld a judgment which dismissed the city's action and instructed the parties to proceed to litigate the complaint then being processed by the commission, the decision of which led to this appeal.

directs that it be composed of three members. Two members of the commission constitute a quorum for purposes of agency action. G. L. c. 23, § 9 O (*b*). The vote to initiate a complaint in this case was approved by two commissioners well prior to July 20. The vote constituted the underlying basis for the complaint and was in conformity with G. L. c. 150E, § 11, which directs the commission to investigate a charge and order a hearing on any "complaint" on which probable cause is found. Commission regulation 402 Code Mass. Regs. § 15.04, in effect at the time the complaint issued, requires only that charges which the commission determines require a hearing be embodied in a complaint.[4] There is no requirement in G. L. 23, § 9 O, G. L. c. 150E, § 11, or the commission's regulations that a complaint charging a prohibited practice be signed by each commissioner who authorized it. The purpose of the complaint is to give notice to the employer or the employee organization that the commission has found a basis to proceed to hearing on some or all of the prohibited practice charges that have been investigated. The complaint here satisfied the notice requirement and was in accordance with the law and the commission's regulations. Since two commissioners had authorized the complaint during their terms in office a proper jurisdictional basis existed for the complaint and the commission's subsequent proceedings.

2. The city contends that the commission's decision must be set aside because art. 14.1 is silent as to HMO coverage and does not provide for any HMO employee cost contributions. Thus, the city maintains, art. 14.1 cannot come within the "grandfather" provision of St. 1989, c. 653, § 218. The

---

[4]This regulation provides in part as follows:

"When a charge has been filed, an investigation may be conducted by the Commission or its agents. After such investigation, if it appears to the commission that a hearing is required, it shall cause to be served upon the parties a complaint or a notice of hearing. The Commission may decline to issue a complaint unless it is satisfied that the charging party has made reasonable efforts to resolve the matter." 402 Code Mass. Regs. § 15.04 (1) (1981).

city also argues that the commission could not have relied on evidence of established past practices to conclude that the city had an obligation to maintain its past level of HMO contributions because that level was mandated by statute, see G. L. c. 32B, § 16, and note 2, *supra*, and not by a collective bargaining agreement. The city casts this argument in terms of the commission's decision lacking support in substantial evidence.

The argument is unsound. The commission was required to decide whether the words in art. 14.1, "or its equivalent," when used in connection with, and reference to, the city's "Blue Cross/Blue Shield Municipal Master Medical Plan in effect on July 1, 1974," include an HMO so as to invoke the "grandfather" provision of § 218.[5] See *Everett v. Local 1656, Int'l Ass'n of Firefighters*, 411 Mass. 361, 366 (1991). This issue presented a matter of interpretation of the collective bargaining agreement.

The commission properly interpreted the agreement. It considered the following undisputed facts. Art. 14.1 specifically provides that the city will continue to offer the Blue Cross/Blue Shield Municipal Master Medical Plan in effect on July 1, 1974, "or its equivalent." When the city and the union negotiated that health insurance provision, the city offered employees a choice between Blue Cross/Blue Shield and HMO coverage. Since 1974, the city has made HMO

---

[5]As we noted in the first *Everett* case, *supra* at 366:

"In enacting St. 1989, c. 653, §§ 37 and 218, the Legislature was undoubtedly aware of the following: (a) that there was no prior legislative authorization mandating contribution from employees for the cost of HMO premiums; (b) that existing collective bargaining agreements were likely to contain provisions which required governmental units to contribute on an equal dollars basis, see note 2, *supra*, to the payment of premium costs for both group indemnity and HMO plans; (c) that some protection for these provisions was necessary to avoid a claim that the new assessment authorized by § 37 unlawfully impaired rights protected by existing collective bargaining agreements; and (d) that there could be myriad variations in existing collective bargaining agreements concerning employee health care benefits and payment of the premiums therefor which. could require interpretation."

coverage available, at a cost to employees of the difference between the total HMO plan cost and the amount of the city's indemnity plan contribution.

Because the only evidence of the parties' intent as to art. 14.1 was the testimony of the union's president that he believed the parties intended to treat HMO coverage the same as Blue Cross/Blue Shield coverage, the commission correctly focused on established practices concerning HMO coverage. The commission reasoned that the relationship between the parties' agreement, and the statutory requirement of G. L. c. 32B, § 16, mandating an equal dollar amount expenditure for HMO coverage, fixed the city's contribution rate for HMO coverage. The commission concluded: "[W]hen the [c]ity agreed to provide the Blue Cross/Blue Shield Municipal Master Medical Plan in effect on July 1, 1974 or its equivalent, the [c]ity effectively agreed to contribute the same dollar amount toward the cost of HMO premiums, which the [c]ity knew would cover 100% of HMO premiums. The language of [a]rticle 14.1(b), '[the] contribution of the employee to the premiums for the above insurance programs shall be fixed as of July 1, 1974,' included the rate for HMO premiums as one of the equivalent programs referred to in [a]rticle 14.1 whose rate was controlled by the contract language. Therefore, [a]rticle 14.1 determined the percentage contribution rate toward HMO coverage . . . ."[6] Section 218 provides that "where such percentage contribution [for HMO coverage] is determined by a collective bargaining agreement," it "shall not be altered until the expiration date of said collective bargaining agreement . . . ." Section 218 does not require any specific description of HMO coverage in the applicable collective bargaining agree-

---

[6]In view of this language, the city is incorrect in its contention that the commission's decision did not rest on an interpretation of the parties' collective bargaining agreement. The commission considered past practices as an aid to interpretation of the collective bargaining agreement. Its decision did not rest on a finding that the city had altered past practices not memorialized in a collective bargaining agreement with respect to the provision of HMO coverage.

ment; it requires only that the HMO percentage contribution be determined by the agreement.

In resolving the problem, the commission was required to examine the language of the collective bargaining agreement in the context of the parties' conduct. To conclude that the city had committed a prohibited practice, it was sufficient for the commission to find that the city had failed to bargain over (unilaterally increased) employee contributions for HMO coverage. See *Commonwealth* v. *Labor Relations Comm'n,* 404 Mass. 124, 127 (1989) (public employer may not unilaterally implement changes to a mandatory subject of bargaining without negotiation). See also *Anderson* v. *Selectmen of Wrentham,* 406 Mass. 508, 511 (1990) (health insurance premium is mandatory subject of collective bargaining); *School Comm. of Medford* v. *Labor Relations Comm'n,* 380 Mass. 932 (1980). It was not necessary for the commission also to find that the city had expressly repudiated the agreement. The commission's conclusion that the parties' contract language determined the employee percentage of HMO contributions, and that § 218 protection was thus warranted, is based on substantial evidence. We accept these determinations.

3. The city argues that the union lost any rights collectively to bargain about the increase in employee HMO premium contributions because it decided to file a charge with the commission rather than demanding that bargaining occur. The union had no obligation, however, to bargain in midterm about an issue covered by an existing collective bargaining agreement. See *City of Salem,* 5 M.L.C. 1433, 1437 (1978) ("Subjects clearly negotiated and included in an agreement may not be renegotiated mid term at the insistence of either party"). See also *Western Mass. Elec. Co.* v. *NLRB,* 589 F.2d 42, 48 (1st Cir. 1978); *NLRB* v. *Jacobs Mfg. Co.,* 196 F.2d 680, 683-684 (2d Cir. 1952). Since the union had no duty to bargain with the city over the increase in employee contributions to HMO coverage, we need not consider whether the union waived its right to bargain about the increase before the increase was implemented.

The decision of the Labor Relations Commission is affirmed.

*So ordered.*