SCHOOL COMMITTEE OF BROCKTON *vs.* BROCKTON
EDUCATION ASSOCIATION.

No. 92-P-989.

Plymouth. October 19, 1993. - March 2, 1994.

Present: DREBEN, KASS, & PORADA, JJ.

*Municipal Corporations*, Group insurance, Collective bargaining. *Labor*,
Health benefit plan. *Contract*, Collective bargaining contract. *Arbitra-
tion*, Collective bargaining.

Where a dispute between a union and a public employer concerning the
appropriateness of a ten percent payroll deduction pursuant to G. L. c.
32B, § 16, as amended by St. 1989, c. 653, § 37, for employees who
elected health maintenance organization membership presented a ques-
tion of the meaning of certain language in the parties' collective bar-
gaining agreement, considered in light of the "grandfather" provisions
of St. 1989, c. 653, § 218, the dispute was an appropriate subject for
arbitration under the agreement's grievance procedure. [174-176]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 21, 1992.

The case was heard by *Paul A. Chernoff*, J.

*Mark G. Kaplan* for the defendant.

*Leo J. Peloquin* for the plaintiff.

KASS, J. What the parties dispute is a variant of the prob-
lem considered in *Everett* v. *Local 1656, Intl. Assn. of
Firefighters*, 411 Mass. 361 (1991) (*Everett I*), and its se-
quel, *Everett* v. *Labor Relations Commn.*, 416 Mass. 620
(1993) (*Everett II*). Attention to the over-all approach, as
well as the details, of those opinions points to the conclusion
that the dispute in this case, which, like the *Everett* cases,
relates to employee contribution to health insurance, should
be submitted to arbitration, rather than resolution by a
court. Accordingly, we vacate a judgment of a Superior
Court judge permanently staying arbitration.

The factual background much resembles that of the *Everett* cases. In 1989, the Brockton Education Association (the "union") and the Brockton school committee (the "committee") signed a collective bargaining agreement (the "agreement") to be in effect from September 1, 1989, to August 31, 1992. Article XXIII(A)(2) provided that teachers "who participate in the Blue Cross and Blue Shield Plan shall pay ten percent (10%) of the monthly premium for such coverage," the requirement of a ten percent employee contribution to be in force January 1, 1990. Some teachers subscribed to a health maintenance organization (HMO), as to which the monthly premium was lower than the charge for the straight indemnity coverage of Blue Cross/Blue Shield.

Prior to the enactment of St. 1989, c. 653, § 37, if the total premium, in dollars, of a subscriber to an HMO was the same or less than the amount the municipal employer was required to pay for straight indemnity coverage, the employer paid the entire HMO premium.[1] See G. L. c. 32B, § 16, third par., as amended through St. 1976, c. 454, § 2. See *Everett II*, 416 Mass. at 622 & n.2; *Hemman* v. *Harvard Community Health Plan, Inc.*, 18 Mass. App. Ct. 70, 72-74 (1984). The 1989 act[2] amended § 16(3) to provide that "[e]ligible persons, having elected [HMO] coverage under this section . . . shall pay a minimum of ten percent of the total monthly premium cost or rate for coverage under this section, and the governmental unit shall pay the remainder of the total monthly premium cost or rate . . . ." It is not difficult to follow the expression of legislative policy, viz., public employees were to contribute at least ten percent of their health insurance premiums. Almost simultaneously,

---

[1]For example, suppose a monthly Blue Cross/Blue Shield premium of $500, as to which the public employer was required to pay ninety percent and the employee ten percent. In that case the employer's share would be $450. If the monthly premium for an HMO were $440, the employer would pay the entire premium.

[2]Statute 1989, c. 653, § 37, was approved January 4, 1990, and, by St. 1989, c. 653, § 242, became effective July 1, 1990.

however, the Legislature enacted St. 1989, c. 653, § 218,[3] which provided:

> "Notwithstanding [the amended provisions of] section sixteen of chapter thirty two[B] of the General Laws, the percent contribution to the total monthly premium cost or rate for coverage under said section sixteen for any employees of any governmental unit *where such percent contribution is determined by a collective bargaining agreement as of the effective date of this act shall not be altered until the expiration date of said collective bargaining agreement, unless the parties to said agreement agree otherwise . . .*" (emphasis supplied).

Stated otherwise, if employees have the benefit of a collective bargaining agreement that allows them to pay less than ten percent of the cost of HMO coverage, they will enjoy that benefit for the life of the agreement, notwithstanding the ten percent minimum generally applicable as a consequence of the 1989 legislation.

Claiming to act under the provisions of G. L. c. 32B, § 16, third par., as amended in 1989, the committee on April 12, 1990, notified all its employees with HMO coverage that beginning July 1, 1990, they would be charged with the statutorily mandated ten percent contribution to HMO premiums. In accordance with that announcement the committee on July 1, 1990, began deducting the ten percent contribution from the paychecks of HMO subscribers. The union responded with the filing of a grievance based on the collective bargaining agreement and the grandfather rights bestowed by St. 1989, c. 654, § 218. After following the preliminary steps of the grievance procedure under the agreement, the union filed a demand for arbitration with the American Arbitration Association, the question being whether the collective bargaining agreement conferred on Brockton teachers who were HMO members the right to pay

---

[3] Also approved January 4, 1990, this provision took effect upon passage.

less than ten percent of the cost of their coverage. Although the committee participated in preliminary steps such as selecting an arbitrator and scheduling arbitration, it also filed an application under G. L. c. 150C, § 2(*b*), to stay arbitration.

A judge of the Superior Court, as indicated above, stayed the arbitration. His reason was that the collective bargaining agreement contained no language bearing directly on HMOs and none from which the judge was able to infer that it bore on HMO charges. In *Everett I*, the language in the collective bargaining agreement which was held to comprehend the subject of HMOs was the description of an insurance program as "Blue Cross/Blue Shield Municipal Master Medical Plan in effect on July 1, 1974 or its equivalent." *Everett I*, 411 Mass. at 363, 366. The phrase "or its equivalent" was the connecting link. *Ibid.* The judge saw no similar link in the Brockton contract. We think that was too constrained a reading of the Brockton contract.

In pertinent part, art. XXIII(A)(2) of the Brockton collective bargaining agreement provided:

> "Teachers who participate in the Blue Cross and Blue Shield Plan shall pay ten percent (10%) of the monthly premium for such coverage . . . with the remaining 90% being paid by the City. The ten percent (10%) employee contribution shall become effective as of January 1, 1990, or whenever permissible under the provisions of Mass. General Laws Chapter 32B, whichever is later; until then, the participating teachers' monthly contribution for such coverage shall continue to be $40.00 for family coverage and $16.00 for individual coverage.
>
> "In the event that any employees in the City of Brockton, including employees of the School Department, pay lower premiums than specified above, then the teachers' contributions shall be reduced to that same amount."

What the quoted language means is a little muddy and, paradoxically, that very turbidity clarifies the problem at hand. The second paragraph is at least susceptible of the interpretation that it refers to forms of health insurance coverage other than Blue Cross/Blue Shield, although it may also refer to different apportionment formulae. The subject matter of art. XXIII, generally, is insurance coverage. At the time the parties negotiated the contract, some of the teachers were subscribers to HMOs, a fact which suggests that a possible interpretation of the contract language is that "Blue Cross/Blue Shield" should be read as referring generically to health insurance. If there is room for doubt or interpretation, the question is an apt one for arbitration. *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1008 (1990). *Grobet File Co. of America* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 135 (1988). Usage, or in the vocabulary of labor law, past practice, is a guide to the content and interpretation of a collective bargaining agreement. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580-582 (1960). *Peabody* v. *Peabody Police Benevolent Assn.*, 34 Mass. App. Ct. 113, 116 (1993). Resolution of the very sort of problem with which we are here confronted requires examination of "the language of the collective bargaining agreement in the context of the parties' conduct." *Everett II*, 416 Mass. at 627.

Questions involving matter of interpretation of the collective bargaining agreement constituted a grievance under art. III(a)(1) of the collective bargaining agreement. Arbitration, in turn, was the fourth level of the grievance procedure under the agreement. It follows that interpretation of the health insurance provisions of the contract was not only an appropriate question for arbitration but was required to be arbitrated before resort to a court.

To this we may add the observation in *Everett I*, 411 Mass. at 366, that disputes over the meaning of particular provisions in collective bargaining agreements about the allocation of health insurance premium burdens are better the subject of "dispute resolution mechanisms contained in the

agreements" than adjudication by courts. That approach is no more than a particularized application of the more general principle that when parties have agreed to arbitrate disputes over interpretation of the terms of their contract, they should be required to follow the arbitral course, unless there is an express provision excluding a specific sort of grievance from arbitration or there is other forceful evidence or policy adding up to a purpose to exclude the claim from arbitration. *AT&T Technologies, Inc.* v. *Communications Workers of America*, 475 U.S. 643, 650 (1986). *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 113 (1977). *Blackstone-Millville Regional Sch. Dist.* v. *Maroney*, 12 Mass. App. Ct. 877, 878 (1981). Compare those cases where certain subjects "simply are beyond the scope of public sector collective bargaining." *Boston* v. *Boston Police Patrolmen's Assn., Inc.* 403 Mass. 680, 684 (1989), and cases cited. Contrast *Carr* v. *Transgas, Inc.*, 35 Mass. App. Ct. 581, 584-585 (1993).

The judgment granting a stay of arbitration is vacated, and a judgment shall be entered pursuant to G. L. c. 150C, § 2(*b*), directing the parties to proceed to arbitration.

*So ordered.*