CHESTER A. KUSY & another[1] *vs.* TOWN OF MILLBURY.

Worcester. December 8, 1993. - May 12, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Municipal Corporations*, Insurance, Group insurance. *Insurance*, Group, Health care organization. *Millbury.*

The record of an action for declaratory and injunctive relief brought by a retired police officer against the town that formerly employed him, demonstrated that the town had not violated the provisions of G. L. c. 32B, by being unable, after extensive efforts, to contract for group indemnity health insurance for its employees and retirees or by being practicably unable to self-insure that coverage. [768-770]

An injunctive order entered by a judge was vacated where it was based on an apparent misunderstanding of the authority of the municipal by-law under which the order was issued. [770]

CIVIL ACTION commenced in the Superior Court Department on May 15, 1992.

The case was heard by *James P. Donohue*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Joseph G. Donnellan* for the plaintiffs.

*Joseph M. Hamilton* for the defendant.

*Sandra Charton*, for International Brotherhood of Police Officers, amicus curiae, submitted a brief.

*Sharon A. DeLouchrey*, for Massachusetts Municipal Association, amicus curiae, submitted a brief.

LIACOS, C.J. In this action for declaratory and injunctive relief, the plaintiffs, Chester A. Kusy and Janet M. Kusy, appeal from (1) the Superior Court's grant of summary

---

[1] Janet M. Kusy.

judgment in favor of the defendant, the town of Millbury (town), and the denial of the plaintiffs' motion for summary judgment, and (2) a declaration that the town did not violate any provision of G. L. c. 32B (1992 ed.). We granted the plaintiffs' application for direct appellate review. The town cross appeals, requesting that we vacate a portion of the Superior Court judgment which directed the town to provide "individual insurance policies" to the Kusys.[2] We agree with the town that this portion of the order must be vacated. In all other respects, we affirm the judgment of the Superior Court.

We begin with the facts, drawn from the materials submitted in conjunction with the cross motions for summary judgment, and about which there is no dispute.[3] Chester Kusy is a retired, disabled police officer of the town. He and his wife live in California. Until October 1, 1991, the Kusys were covered by a group indemnity health insurance plan, offered through Blue Cross/Blue Shield of Massachusetts (BC/BS), and provided by the town.

Under the terms of the contract between the town and BC/BS, the town was required to maintain an enrollment of at least twenty per cent of its eligible employees in the BC/BS plan. In 1991, enrollment in the BC/BS plan dropped below twenty per cent, largely as a result of employees switching to less expensive health maintenance organizations (HMOs). BC/BS terminated its contract with the town as of October 1, 1991.

Before the contract terminated, the town sought to obtain another carrier to provide group indemnity health insurance. In April, 1991, the town's insurance consultant issued a "re-

[2] We acknowledge the amicus briefs filed by the International Brotherhood of Police Officers and by the Massachusetts Municipal Association.

[3] The town has moved to strike certain factual allegations contained in the Kusys' brief and reply brief, on the ground that the statements are not supported by the record. See Mass. R. A. P. 16 (e), as amended, 378 Mass. 940 (1979). Some of the Kusys' statements cited by the town have no basis in the record, and we disregard them. See *Service Publications, Inc. v. Goverman,* 396 Mass. 567, 580 (1986).

quest for proposal" to sixteen insurance carriers, third-party administrators, and preferred providers (PPOs), soliciting proposals for group health insurance. The request stated that the town would accept bids on "any and all type comprehensive major medical plans and/or PPO type programs." None of the carriers offered a quote for coverage. In addition, the town explored the possibility of self-insuring, see G. L. c. 32B, § 3A, but determined that this option was financially unfeasible.

When the BC/BS contract terminated, many of the employees and retirees who had been covered by BC/BS switched to one of the HMOs offered by the town. This was not a feasible alternative for the Kusys and other retirees who lived outside the geographical areas serviced by the HMOs. To provide health insurance coverage to these retirees, the town made arrangements with BC/BS permitting these retirees to convert their group coverage to individual or family policies.

To assist employees with the premiums for these plans, the town adopted a by-law, pursuant to art. 89 of the Amendments to the Massachusetts Constitution (Home Rule Amendment) and G. L. c. 43B, § 13 (1992 ed.). The by-law, which was approved by the Attorney General, authorized the town to pay for nongroup individual or family health insurance coverage for any employee or retiree not eligible for an HMO. The by-law is set to terminate if the town obtains a group insurance contract with a commercial carrier.

On September 27, 1991, the town sent a letter to its retirees, including the Kusys, detailing the terms of the BC/BS termination agreement. The letter explained that the retirees would be eligible for conversion to an individual or family policy with BC/BS and that the switch in type of policy would not require additional underwriting (and thus, would not exclude any preexisting medical conditions). Of the retirees offered this option, only the Kusys chose not to enroll, apparently because they were dissatisfied with the terms of the plan. Had they enrolled during the enrollment period (long since passed), they would have been covered by Blue

Cross/Blue Shield of California under the terms of the transfer agreement with BC/BS.

Based on these facts, both parties moved for summary judgment. General Laws c. 32B provides a comprehensive scheme which requires a municipality to contract for and contribute to a program of insurance for its employees and retirees. *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham,* 404 Mass. 365, 367 (1989).[4] Section 3 provides in part: "[T]he appropriate public authority of the governmental unit shall negotiate with and purchase, on such terms as it deems to be in the best interest of the governmental unit and its employees . . . group general or blanket insurance providing hospital, surgical, medical and dental benefits covering employees." The Kusys' principal claim in this case is that the town violated this statute in failing to provide group indemnity insurance. The town concedes that it no longer provides this type of insurance, but argues that its inability to do so relieves it of responsibility under the statute. The Kusys argue that, if the town is unable to procure a group indemnity carrier, it must self-insure. See G. L. c. 32B § 3A.[5,6]

The judge found: "Although the provisions of G. L. c. 32B, § 3 clearly require the Town to provide group insur-

---

[4]General Laws c. 32B is a local option law. The parties do not dispute that the town has adopted the relevant provisions of the statute.

[5]This section provides in part: "A . . . town . . . when providing hospital, surgical, medical, dental and other health care coverage as authorized by this chapter, and subject to the adequacy of a claims trust fund as hereinafter described, may, in lieu of or in addition to entering into the insurance policies, agreements, or contracts described in this chapter, enter into an administrative services or other contract . . . to organize, arrange, or provide for the delivery or payment of health care coverage or services, whereby the funds . . . shall be furnished by the [town] from the claims trust fund . . . ." G. L. c. 32B, § 3A.

[6]The Kusys do not argue on appeal (as they did below) that the town is obligated to proceed pursuant to G. L. c. 32B, § 12, which allows governmental units to join together to purchase insurance. Therefore, they have waived the issue, and we need not address it. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); *Boston Hous. Auth.* v. *Guirola,* 410 Mass. 820, 827 n.9 (1991).

ance . . . the Town of Millbury, given the current situation, has essentially complied with the terms of this chapter." The judge held that the town was not obligated to self-insure pursuant to § 3A because that section is discretionary, not mandatory. The judge found the provision was not mandatory because it speaks in terms of what the town "may" do, as opposed to what the town "shall" do. See *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne*, 14 Mass. App. Ct. 76, 80 (1982).

While we adhere to the view that "shall" denotes a mandate and "may" denotes an option, we think that the more relevant inquiry is what the town is able to do. Section 3, as the judge noted, clearly requires the town to provide group indemnity insurance: "[The town] *shall* negotiate with and purchase . . . group general or blanket insurance . . . ."[7] The town argues that it is unable to comply with this mandate. Accompanying its motion for summary judgment, the town submitted uncontradicted documents attesting to this inability. The record includes affidavits which detail the extensive efforts undertaken to obtain another carrier when BC/BS announced its intention to terminate the contract. It also included uncontroverted support for the proposition that the town could not feasibly act pursuant to § 3A. We agree with the judge below that the record before him was sufficient to support the holding that the town, acting alone, cannot obtain a new group indemnity policy.

The town has complied, to the full extent possible, with the requirement of c. 32B, and we note the truism that neither the judge below nor this court could order the town to do

---

[7]We address briefly the town's argument that the language "on such terms as it deems to be in the best interest of the [town] and its employees," in c. 32B § 3, standing alone, allows the town to provide no group insurance at all. There is no support, in logic or in law, for the view that a statutory mandate, coupled with discretion in determining the best manner to carry out the mandate, renders the "mandate" optional.

that which it cannot possibly do. See *Milano* v. *Hingham Sportswear Co.*, 366 Mass. 376, 378 (1974).[8]

In its cross appeal, the town argues that the judge erred in ordering the town to provide the plaintiffs individual insurance policies until a group policy is reinstated. As the town notes, the order appears to be based on a misunderstanding of the authority provided when the town adopted the by-law. We vacate that portion of the order. In all other respects the judgment is affirmed.

*So ordered.*

---

[8]The Kusys raise additional arguments, which we pause to address. First, they argue that the town acted invalidly when it passed the by-law which allows the town to reimburse insurance premiums to its employees and retirees who are not eligible for the insurance plans offered by the town. We question whether the Kusys have standing to assert such a claim, given that the by-law itself in no way harms them, and indeed, provides them a benefit. See *Pratt* v. *Boston*, 396 Mass. 37, 42 (1985) ("only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of [another] branch of government"), quoting *Kaplan* v. *Bowker*, 333 Mass. 455, 459 (1956).

In any case, we reject the Kusys' argument that the by-law is inconsistent with c. 32B. The by-law does not violate § 15, which provides that "[n]o governmental unit may appropriate or expend public funds for the payment of premiums for . . . group general or blanket . . . insurance . . . unless such insurance is procured pursuant to the provisions of the chapter," because the by-law does not concern *group* insurance. Cf. *Kerrigan* v. *Boston*, 361 Mass. 24, 29 (1972).

The Kusys also argue that the town violated G. L. c. 32B, § 16, which requires, in substance, that the town make available the services of an HMO, "on a voluntary and optional basis." The Kusys argue that the town has set up a system which forces employees to select an HMO, thereby creating the present problem where so few employees and retirees desire the group indemnity plan that the contract was terminated. There is nothing in the record to suggest that the town "forced" employees to join the HMOs before the BC/BS contract terminated. The fact that HMOs currently provide the only available health insurance is not a result of anything the town has done.