Gershengorn, J.
Plaintiff Assabet Valley Federation of Teachers, Local 3199, MFT, AFT, AFL-CIO (the Federation) brings this action against the Assabet Valley Regional Vocational School District Committee (the Committee or the District), alleging that the Committee has acted unlawfully by: (1) failing to provide its employees with indemnity style group health insurance after November 1, 1989; and (2) deducting ten percent (10%) of the costs of health maintenance organization (HMO) insurance coverage from its employees’ pay between July 1, 1990 and the summer of 1991. The Federation seeks declaratory and injunctive relief, as well as the return of the employees’ pay deductions, with interest. Having stipulated to a number of facts, the parties agree that no genuine issue of material fact remains and request that the case be decided on the basis of the stipulations and accompanying exhibits.[1] I therefore treat the briefs before me as cross motions for summary judgment. For the reasons stated herein, each party’s motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
The Court treats the following facts drawn from the parties’ stipulations of fact, exhibits to the parties’ stipulations of fact, and defendant’s admissions in its answer to plaintiffs verified complaint as true for purposes of this summary judgment motion only.
The Federation is a voluntary, unincorporated association which is the exclusive bargaining agent for certain employees, including teachers, guidance counselors, nurses, librarians, clericals, and teacher aides, of the Assabet Valley Regional Vocational School District Committee (the school employees). The Committee is the public employer of the school employees represented by the Federation.
The Federation and Committee entered into two collective bargaining agreements relevant to this suit. The first governed the terms and conditions of employment of the District’s professional employees (Unit A) from August 16, 1988 through August 15, 1991. The second governed the terms and conditions of employment of the District’s non-professional employees (Unit B) from July 1,1988 through June 30,1991. The language of each of these agreements is substantially the same, and the relevant provisions of the Unit A Contract are set forth below.
V.A. Blue Cross-Blue Shield
1. Subject to paragraph 2 below, the Committee shall provide seventy percent (70%) of the cost of full semi-private master medical Blue Cross/Blue Shield, Individual or Family Plan, for each member of the bargaining unit for the duration of the Agreement.
As an alternative to Blue Cross/Blue Shield for employees the Committee shall make available and pay cost of a Health Maintenance Organization *320 (HMO) plan up to an amount not to exceed 70% of the Blue Cross/Blue Shield plan . . .
2. Effective August 16, 1989, the Committee’s contribution to the cost of indemnity health insurance shall not exceed 120% of its contribution in the 1988/89 fiscal year. Effective August 16, 1990, the Committee’s contribution to the cost of indemnity health insurance shall not exceed 140% of its contribution in the 1988/89 fiscal year . . .
3. Paragraph 1 above shall be reopened for negotiations for purposes of discussing changes to be effective on or after August 16, 1989. It is understood and agreed that unless both parties agree to such changes, paragraph 1 shall be enforceable as permitted by law, and further, the School Committee waives any right it may have under the collective bargaining laws to implement such changes after negotiating to the point of impasse. It is further understood that no agreement to change paragraph 1 above shall be effective unless specifically approved by the membership of the Federation.[2]
At no time during the parties’ negotiations over the 1988-1991 collective bargaining agreements did the parties discuss the possibility that Blue Cross Blue Shield (BC/BS) would or could terminate its coverage of the District’s employees. However, both the Federation and the Committee anticipated that BC/BS rates would continue to increase.
Beginning in the early 1980s and continuing until November 1, 1989, the Committee offered the school employees a choice from among three to four health maintenance organizations (HMOs) and the “indemnity” style health insurance plan sold by BC/BS. During this time, the Committee contributed to the employees’ HMO premiums an amount equal to (but not exceeding the total HMO premium) the amount of the Committee’s contributions to the BC/BS plan.
As BC/BS rates rose during the 1980s, the number of employees subscribing to the BC/BS indemnity plan decreased, while the number of employees choosing HMO coverage increased. In the 1988-1989 school year, only 47 of the school district’s 156 insurance subscribers enrolled for the BC/BS indemnity plan. The rising BC/BS rates also produced the result that, because of the Committee's equal dollar contribution to indemnity plans and HMOs, the employees’ contributions to the cost of HMO coverage dropped to zero. Employee contributions to HMO premium costs were rendered unnecessary as to some plans by the 1985-1986 school year, and as to all HMO plans by the 1987-1988 school year.
On May 23, 1989, BC/BS advised the Committee that deterioration of the District’s risk pool prevented the development of an actuarially sound rate for indemnity health insurance coverage. BC/BS warned that the District’s account would be cancelled unless something was done to restore the account’s insur-ability. On about June 12, 1989, BC/BS continued to offer coverage to the Federation members, but at rates of approximately double that charged in the previous year. As of July 1, 1989, only four of the school district’s subscribers enrolled in the BC/BS plan. On September 20, 1989, BC/BS warned that it would cancel the District’s account on November 1, 1989 unless insurability was restored.
Effective November 1, 1989, BC/BS terminated its coverage of the school’s employees. Since that date, the Committee has offered only HMO health insurance coverage to the school’s employees.
The parties undertook the reopener negotiations provided for in their collective bargaining agreements, but did not reach any agreement to alter their responsibilities as to health insurance coverage.
In April 1990, the Committee solicited bids on indemnity style health insurance plans from numerous insurance companies. None of the solicited companies offered to bid. BC/BS indicated that it would not offer its indemnity insurance plan to the District unless seventy percent (70%) of the district’s health insurance subscribers participated in the plan.
The Committee continued to contribute the full cost of HMO premiums through June 30, 1990 (while asserting its reservation of rights under the collective bargaining agreements and the law). On July 1, 1990, the Committee began deducting ten percent (10%) of the monthly costs of HMO coverage from the paycheck of each school employee subscribing to an HMO.
In the spring of 1991, the Committee again attempted to obtain a plan of indemnity style health insurance coverage for the school employees. BC/BS submitted a proposal which required a seventy percent (70%) subscriber participation level. There was insufficient interest among the eligible employees to meet the seventy percent (70%) participation requirement.
In negotiations over successor collective bargaining agreements to the 1988-1991 agreements, the Federation agreed to employee contributions of at least ten percent (10%) of HMO costs.
DISCUSSION
Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983).
Pursuant to G.L.c. 150E and G.L.c. 32B, the Committee is responsible for: (1) negotiating with the Federation regarding the terms and conditions of the Federation members’ employment: and (2) administering and paying the government’s share of the Federation members’ health insurance coverage as required by G.L.c. 32B and the parties’ collective bargaining agreements. This case presents two questions related to these obligations. The first is whether the Committee has violated G.L.c. 32B by failing to provide indemnity style health insurance coverage to its employees *321 since November 1, 1989. The second is whether the Committee violated St. 1989, c. 653, §218, which amends c. 32B, by requiring the school employees to pay ten percent (10%) of their HMO premiums between July 1, 1990 and the termination date of their 1988-1991 collective bargaining agreements.[3]
Committee’s Failure To Provide Group Indemnity Health Insurance
General Laws, Chapter 32B provides a comprehensive scheme pursuant to which a municipality is required to contract for, and contribute to, a program of insurance for its employees. Teamsters, Chauffeurs, Warehousemen & Helpers Union Local No. 59 v. Chatham, 404 Mass. 365, 367 (1989). Section 3 of that chapter states that the town “shall” provide employees and their dependents with “group general or blanket” health insurance. G.L.c. 32B, §3. The Federation argues that the District has violated this section since November 1, 1989, at which time BC/BS cancelled the District’s indemnity insurance plan, and the District stopped providing its employees with group indemnity slyle health insurance. The Committee argues that it has complied with §3 to the extent possible and simply cannot obtain group indemnity insurance for its employees.
The stipulated facts and exhibits reflect the Committee’s substantial efforts to maintain a plan of group indemnity style health insurance for the District’s employees. The Committee attempted, albeit unsuccessfully, to maintain its BC/BS plan after it became obvious that BC/BS might cancel the policy. Once BC/BS cancelled the policy, the Committee, on more than one occasion, solicited insurance bids from numerous companies selling indemnity style insurance. However, the Committee was unable to obtain a bid based upon a feasible level of subscriber participation. The record before me clearly demonstrates that the Committee has been unable, despite its significant efforts, to procure group indemnity style health insurance for its employees since November 1, 1989. See Kusy v. Millbury, 417 Mass. 765, 769 (1994).
The Federation argues that if the Committee cannot purchase a group indemnity health insurance plan, sections 3A and 21 of G.L.c. 32B require the Committee to either self-insure or pool with other towns in an effort to provide indemnity style health insurance. See G.L.c. 32B, §§3A, 12. However, both of those provisions, unlike §3 of the Chapter, dictate what the towns “may” do, as opposed to what they “shall” do. G.L.c. 32B, §§3, 3A, 12. The language of those provisions is discretionary, whether or not a group indemnity health insurance plan becomes unavailable. See Reid v. North Reading, Middlesex Superior Court Action No. 92-5563 at 4-5 (Memorandum and Order Dated May 24, 1993, Houston, J.); see also Kusy, supra, 417 Mass. at 769 (“we adhere to the view that ‘shall’ denotes a mandate and ‘may’ denotes an option”).
Even if §§3A and 12 were not deemed discretionary in this situation, there is no basis in the record for concluding that the District is capable of utilizing these insurance alternatives. The Committee contends that self-insurance and pooling are not feasible due to, among other things, the high economic risk of self-insuring and the difficulty of composing an insurable risk pool. The plaintiffs offer no evidence upon which I may make a finding to the contrary. “(T]he relevant inquiry is what the town is able to do ...” and I cannot order the District, “to do that which it cannot possibly do.” Kusy, supra, 417 Mass. at 769-70. I therefore hold that the Committee has sufficiently complied with the provisions of G.L.c. 32B, §3. Id.
Committee’s Deductions of HMO Premiums from Employees’ Pay
When Chapter 32B was enacted in 1955, prior to the existence of HMOs, it required that governmental units offer their employees indemnity style health insurance. G.L.c. 32B, §3. In 1971, the chapter was amended to authorize governmental units to offer their employees the alternative of HMO insurance coverage. G.L.c. 32B, §16.[4] HMO coverage at that time was more expensive than indemnity style coverage and, in 1976, the legislature amended §16 by enacting the “equal dollar rule” which provided that governmental units were to contribute the same, but no greater, dollar amount to HMO coverage as to indemnity coverage. See St. 1976, c. 454, §2; Hemman v. HCHP, 18 Mass.App.Ct. 70, 72-73 (1984).
As both parties note, health insurance costs have since changed, and during the 1980s, HMO coverage became generally less expensive than indemnity style plans. Under the “equal dollar rule,” this produced the result that many public employees were able to receive HMO coverage at no direct cost to themselves. In 1989, the legislature amended §16 to require that public employees electing HMO insurance coverage pay a minimum of ten percent (10%) of their HMO premium costs. St. 1989, c. 653, §37. This amendment was made effective on July 1, 1990. St. 1989, c. 653, §242. However, the legislature provided a “grandfathering” exception to this effective date:
[T]he percent contribution to the total monthly premium cost or rate for coverage under said section sixteen for any employees of any governmental unit where such percent contribution is determined by a collective bargaining agreement as of the effective date of this act shall not be altered until the expiration date of said collective bargaining agreement, unless the parties to said agreement agree otherwise.
St. 1989, c. 653, §218 (emphasis added).
Plaintiff alleges that the Committee violated §218, from July 1, 1990 through the summer of 1991,[5] by unilaterally deducting ten percent (10%) of HMO costs from the paychecks of Federation members enrolled in HMO plans. See St. 1989, c. 653, §218. The Com *322 mittee counters that the §218 exception does not apply to its collective bargaining agreements with the Federation, and that the HMO deductions were made in accordance with §37. See St. 1989, c. 653, §§37, 218. The question presented is whether the parties’ collective bargaining agreements “determine” the school employees’ “percent contribution” to HMO coverage. The essence of the Federation’s argument is that Section V.A. of the parties’ agreements “determines,” at least in effect, that the employees’ “percent contribution" to HMO costs is to be zero percent (0%). The Committee contends that Section V.A. cannot possibly “determine” the employees’ contributions because that section links the amount of the Committee’s HMO contributions to an indemnity plan which ceased to exist on November 1, 1989.
When the parties entered into their 1988-1991 collective bargaining agreements, insurance costs were such that the District’s contributions to BC/BS costs were sufficiently high to require the District, pursuant to the equal dollar rule and the parties’ collective bargaining agreements, to completely cover the costs of employees’ HMO coverage. Had BC/BS not cancelled the District’s coverage, the school’s employees would have only been required to make an HMO contribution had HMO costs soared ahead of the Committee’s required percent contribution to the rising rates of BC/BS (as determined and capped by the parties’ bargaining agreements). The District does not allege, and there is no evidence indicating, that such an event was anticipated by the parties or has, in fact, occurred. Both the Federation and Committee admittedly expected that the BC/BS plan would continue to be available to the school’s employees and that BC/BS rates would continue to rise. In these circumstances, it is clear that both parties expected that the Committee would continue to pay, pursuant to c. 32B and the collective bargaining agreements, the entire cost of its employees’ HMO coverage. There is no reason why the Committee should be relieved of its anticipated obligations because the BC/BS rates rose so significantly that they reduced subscription levels to the point where BC/BS cancelled its coverage. For all practical purposes, the parties to this case bargained for, and their collective bargaining agreements “determined,” employee HMO contributions of zero percent (0%). See Everett v. Labor Relations Commission, 416 Mass. 620, 626-27 (1983).
The circumstances of this case, and the legislature’s concern, in enacting the “grandfathering” provision of St. 1989, for protecting existing collective bargaining agreements, lead me to conclude that the parties’ collective bargaining agreements sufficiently “determine” the school employees’ HMO contributions so as to be governed by that “grandfathering” provision.[6] See Everett, supra, 416 Mass. at 625 n.5, 626-27; St. 1989, c. 653, §218.[7] The Committee was therefore not permitted to alter the school employees’ HMO contribution levels until those bargaining agreements expired. Id.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for summary judgment is DENIED in part, and defendant’s motion is ALLOWED in part, as to the claim that defendant violated G.L.c. 32B by failing to offer its employees group indemnity style health insurance coverage after November 1, 1989. It is further ORDERED that plaintiffs motion for summary judgment is ALLOWED in part, and defendant’s motion is DENIED in part, in all other respects. It is further ORDERED that a declaration enter, declaring that the defendant Assabet Valley Regional Vocational School District Committee acted in violation of its collective bargaining agreements with the plaintiff and St. 1989, c. 653, §218 when, between July 1, 1990 and the expiration dates of the parties’ collective bargaining agreements (August 15, 1991 for Unit A employees and June 30, 1991 for Unit B employees), the defendant deducted ten percent (10%) of the costs of Health Maintenance Organization (HMO) coverage from the paychecks of employees subscribing to such HMO coverage. It is further ORDERED that a hearing be scheduled for the purpose of calculating the amount of money improperly deducted by defendant, which money is to be returned to plaintiff with interest.

 The parties assert that this matter is properly before the court without exhaustion of arbitration and grievance procedures because the dispute requires interpretation of both applicable statutory provisions and the parties’ collective bargaining agreements. Contrast School Committee of Brockton v. Brockton Education Association, 36 Mass.App.Ct. 171 (1994) (where the union sought arbitration pursuant to the terms of the parties’ collective bargaining agreement).

 The Unit B agreement is identical to the Unit A agreement in all relevant respects except that in the Unit B agreement, the effective dates of the BC/BS contribution caps are July 1, 1989 and July 1, 1990, and the reopener date is July 1, 1989.

 This termination date was August 15, 1991 for Unit A employees and June 30, 1991 for Unit B employees.

 It is undisputed that the District has adopted the sections of G.L.c. 32B that are relevant to this action.

 Through August 15, 1991 for Unit A employees and through June 30, 1991 for Unit B employees.

 The fact that the collective bargaining agreements provide for reopener negotiations as to health insurance costs does not alter my finding that the agreements “define” the parties’ respective insurance obligations. The reopener provisions only allow changes to be made upon both parties’ agreement, a circumstance which has not occurred.

 Further, I note that although the Committee cannot be forced to purchase a group indemnity health insurance plan that it cannot obtain, it does not follow that the Committee should receive an unexpected windfall as the result of its failure to comply with the statutory mandates of c. 32B.