DENNIS CONNORS & others[1] vs. CITY OF BOSTON & others.[2]

Suffolk. April 8, 1999. - July 8, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Municipal Corporations,* Home rule, Group insurance, By-laws and ordinances. *Constitutional Law,* Home Rule Amendment. *Statute,* Construction. *Insurance,* Group. *Words,* "Dependents."

Discussion of the analysis used to determine whether local action is inconsistent with State laws or the State Constitution, and is thereby in violation of the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, and the Home Rule Procedures Act, G. L. c. 43B, § 13. [34-35]

An executive order signed by the mayor of the city of Boston, extending group health insurance benefits to registered domestic partners of city employees and their dependents, was inconsistent with G. L. c. 32B, §§ 2 (*b*) and 15 (*b*), which provide the exclusive manner in which the city may appropriate and expend funds for such benefits [35-36]; consequently, the executive order violated the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, and the Home Rule Procedures Act, G. L. c. 43B, § 13, and a Superior Court judge correctly granted a preliminary injunction enjoining implementation of the order [36-43].

CIVIL ACTION commenced in the Superior Court Department on November 10, 1998.

A motion for a preliminary injunction was heard by *Charles M. Grabau,* J., and a question of law was reported to the Appeals Court by him. The Supreme Judicial Court granted a request for direct review.

*Vincent P. McCarthy,* of Connecticut (*William P. Monahan* with him) for the plaintiffs.

*David A. Mills* (*Robert L. Quinan, Jr.,* Assistant Attorney General, with him) for the city of Boston & another.

[1] Francis X. Coppinger; Richard G. Costello; Anthony R. Doherty; C. Joseph Doyle; Phyllis Igoe; Edward Jacobs; Robert W. Joyce; Fred D. Long, Jr.; Robert P. Largess; Cornelius J. Sullivan; and Thomas White.

[2] The mayor of Boston. Kay Schmidt, Diane Pullen, and Gay & Lesbian Advocates & Defenders (GLAD) were allowed to intervene as defendants.

*Jennifer L. Levi* (*Mary L. Bonauto* with her) for Diane Pullen & others.

The following submitted briefs for amici curiae:

*Thomas L. Reilly,* Attorney General, & *Robert L. Quinan, Jr.,* Assistant Attorney General, for the Attorney General.

*David Rome, Katherine Shea, Ann Clarke,* & *Jeffrey Jacobsen,* for Massachusetts Federation of Teachers & others.

MARSHALL, J. We decide in this case whether an executive order signed by the mayor of the city of Boston extending group health insurance benefits to the domestic partners of city employees is inconsistent with certain provisions of State law and for that reason violates the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, and G. L. c. 43B, § 13.[3] We conclude that it is, and that an interlocutory order to that effect entered by a judge in the Superior Court is correct.

## I

On August 4, 1998, Mayor Thomas M. Menino signed an executive order extending group health insurance benefits to registered domestic partners[4] of city employees and their dependents. The executive order went into effect on November

---

[3]We acknowledge the amicus brief filed by the Attorney General; the amicus brief filed jointly by the Massachusetts Federation of Teachers and the Massachusetts Teachers Association; Service Employees International Union District 285, District 509, and District 925; and the amicus statement filed jointly by the city of Cambridge and the town of Brookline.

[4]Boston Public Health and Welfare Ordinance 12-9A.1 (1993) provides:

"*Domestic partnership* shall mean two (2) persons who meet the following criteria and affirm that:

"1. They share basic living expenses;

"2. They assume responsibility for the welfare of their partner and any dependents registered pursuant to subsection 12-9A.2;

"3. They are at least eighteen (18) years of age;

"4. They are competent to enter into a contract;

"5. They declare that they are each other's sole domestic partner;

"6. They are not married to anyone nor related to each other by blood closer than would bar marriage in the Commonwealth of Massachusetts;

"7. They shall notify the City Clerk of any change in the status of their domestic partnership; and

1, 1998. On November 10, 1998, the plaintiffs, Boston residents, commenced this action pursuant to G. L. c. 40, § 53, challenging the validity of the executive order. They alleged, in broad terms, and without reference to any particular statute or constitutional provision, that the executive order is inconsistent with the authority granted to the city by the Legislature to provide health insurance to city employees.[5] The plaintiffs sought a preliminary injunction to enjoin the implementation of the executive order, on which a hearing was held on December 2, 1998. The Gay & Lesbian Advocates & Defenders (GLAD), Kay Schmidt, a city employee, and Diane Pullen, Schmidt's registered domestic partner, filed a motion to intervene as defendants. On December 11, 1998, the judge allowed GLAD, Schmidt, and Pullen to intervene,[6] but limited GLAD's participation to the representation of Schmidt and Pullen's interests.[7]

On December 11, 1998, the judge ruled that the executive order is inconsistent with provisions of G. L. c. 32B, §§ 2 (*b*) and 15 (*b*),[8] and granted the plaintiffs' request for a preliminary

"8. They register their domestic partnership as set forth in subsection 12-9A.2 of this section; and their dependents as [*sic*] registered pursuant to subsection 12-9A.2."

Domestic partners must register, as provided above, and either member may terminate a domestic partnership by filing a termination statement with the city clerk. Boston Public Health and Welfare Ordinance 12-9A.2 (1993).

[5]The plaintiffs also alleged that the mayor had improperly "legislated in the area of marriage," had improperly recognized "common law" marriages between heterosexual and homosexual couples, and had otherwise impermissibly "expanded" the definition of marriage in a manner that the Commonwealth does not recognize.

[6]The motion also sought to add City Councilor Thomas Keane, Jr., and Service Employees International Union, Local 285. The judge did not rule explicitly on that aspect of the motion.

[7]The defendants filed a motion to dismiss for lack of standing and a motion to dismiss for lack of jurisdiction, both of which the judge denied. Those rulings are not at issue here.

[8]The purpose of G. L. c. 32B is to provide various group insurance plans, including group health insurance, "for certain persons in the service of counties, except Worcester county, cities, towns and districts and their dependents." G. L. c. 32B, § 1. Section 2 (*b*) defines "[d]ependents" as:

"an employee's spouse, an employee's unmarried children under nineteen years of age, and any child nineteen years of age or over who is mentally or physically incapable of earning his own living . . . Said

injunction. Concluding that "the issue raised in this case presents a current and important question of law not previously decided by a Massachusetts appellate court," the judge, pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), reported the following question to the Appeals Court:

> "Whether the Executive Order signed by Mayor Thomas M. Menino on August 4, 1998, extending health benefits coverage to domestic partners of Boston city employees, and their dependents, is inconsistent with G. L. c. 32B, §§ 2(b) and 15(b), and, therefore, in violation of § 6 of the Home Amendment Rule and G. L. c. 43B, § 13."[9]

The judge stayed his order granting the preliminary injunction until his report was docketed in the Appeals Court. A single justice of the Appeals Court continued the stay pending appeal because "the question reported . . . presents a meritorious issue on appeal" and "the equities weigh heavily in favor of a stay pending appeal." We granted the defendants' application for direct appellate review.

## II

We consider whether the judge was correct to conclude that

---

definition shall also include an unmarried child nineteen years of age or over who is a full-time student in an educational or vocational institution and whose program of education has not been substantially interrupted by full-time gainful employment excluding service in the armed forces."

Section 15 (*b*) provides:

"No governmental unit may appropriate or expend public funds for the payment of premiums for [the various insurance plans, including health insurance,] for its active or retired employees, or their dependents, unless such insurance is procured pursuant to the provisions of this chapter, or unless such payments are authorized by section five of chapter forty, or unless such payments are made, pursuant to an agreement of an employer and an employee organization, to a health and welfare trust fund agreement . . . ."

[9]"Under Mass. R. Civ. P. 64, 365 Mass. 831 (1974), a judge of the trial court may not report a question of law, but may report the propriety of an interlocutory order. We shall construe the judge's action as a report of the correctness of his ruling . . . ." *Colella* v. *Commonwealth*, 417 Mass. 433, 434 (1994).

the executive order is inconsistent with certain provisions of G. L. c. 32B. Article 89, § 6, of the Amendments to the Massachusetts Constitution, the Home Rule Amendment, provides:

> "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight, and which is not denied, either expressly or by clear implication, to the city or town by its charter. This section shall apply to every city and town, whether or not it has adopted a charter pursuant to section three."

The Home Rule Procedures Act, G. L. c. 43B, § 13, contains virtually, identical language. Thus, under the home rule provisions, the city may undertake any action that is not "inconsistent" with State laws or the Constitution.[10] Massachusetts has the "strongest type of home rule," *Bloom* v. *Worcester*, 363 Mass. 136, 143 n.4 (1973), citing 1965 Senate Doc. No. 950 at 65-66, and municipal action is presumed to be valid. *Take Five Vending, Ltd.* v. *Provincetown*, 415 Mass. 741, 744 (1993). Cf. *Wendell* v. *Attorney Gen.*, 394 Mass. 518, 524 (1985). The analysis whether local action is inconsistent with a State statute is analogous to the analysis whether Federal law preempts State action, *Bloom* v. *Worcester, supra* at 151; the touchstone of the analysis is whether the State Legislature intended to preempt the city's authority to act. *Id.* at 155.

Recently, in *Boston Gas Co.* v. *Somerville*, 420 Mass. 702, 704 (1995), we summarized the appropriate analysis for resolving this question: We look "to see whether there was either an express legislative intent to forbid local activity on the same subject or whether the local regulation would somehow frustrate the purpose of the statute so as to warrant an inference that the

---

[10]The power a city exercises pursuant to the Home Rule Amendment must be one "which the general court has power to confer on it." Art. 89, § 6, of the Amendments to the Massachusetts Constitution. In *Opinions of the Justices*, 427 Mass. 1211, 1216-1218 (1998), the Justices opined that the Legislature properly may delegate to the city the authority to extend health insurance benefits to domestic partners and their dependents and to define the terms "domestic partner" and "dependent," notwithstanding the provisions of G. L. c. 32B, § 2 (*b*). That aspect of the home rule analysis is not an issue in this case.

Legislature intended to preempt the subject. *Bloom* v. *Worcester*, [*supra* at] 155-156. Moreover, in some circumstances we can infer that the Legislature intended to preempt the field because legislation on the subject is so comprehensive that any local enactment would frustrate the statute's purpose. *Wendell* v. *Attorney Gen.*, [*supra* at 527-528]." *Boston Gas Co.* v. *Somerville*, *supra*. We have also indicated that the invalidation of a local regulation requires a "sharp conflict" between it and the State legislation, which "appears when either the legislative intent to preclude local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved in the face of the local by-law." *School Comm. of Boston* v. *Boston*, 383 Mass. 693, 701 (1981), quoting *Grace* v. *Brookline*, 379 Mass. 43, 54 (1979).

The crux of this dispute is accordingly the Legislature's intent in enacting the provisions of G. L. c. 32B. The plaintiffs argue that § 15 (*b*), the substance of which was first enacted in 1967, was intended to preclude a city from providing group health insurance benefits to persons other than those specifically designated by definition in § 2 (*b*): city employees and their dependents, defined as spouses, children under nineteen years of age, and children over nineteen years who are unable to provide for themselves. The defendants and amici respond that the Legislature did not intend to address domestic partners at all within the ambit of G. L. c. 32B, and that a governmental unit is free to appropriate and expend public funds to pay for group health insurance premiums for them. They do not suggest that § 2 (*b*)'s provision for "spouses" includes domestic partners,[11] or that domestic partners are otherwise "dependents." Rather, they argue, the statute simply does not pertain at all to the extension of group health insurance benefits to domestic partners.[12]

---

[11]Contrary to the plaintiffs' claims, we see nothing in the executive order that creates the "equivalent" of common-law marriage for registered domestic partners, that conflicts with any criminal law of the Commonwealth, or that otherwise seeks to define the marital status between two individuals in contravention of any Massachusetts statute or the Massachusetts Constitution. See *Opinions of the Justices*, 427 Mass. 1211, 1217-1219 (1998).

[12]According to the Attorney General, "Chapter 32B simply is not relevant to the Mayor's action as it does not govern, nor restrict in any way, the offering of health insurance benefits to domestic partners of City employees."

## A

We look first to see whether there was an "express legislative intent to forbid local activity on the same subject." *Boston Gas Co.* v. *Newton,* 425 Mass. 697, 699 (1997), citing *Boston Gas Co.* v. *Somerville, supra* at 703. Our examination of G. L. c. 32B, as well as the relevant legislative history, leads us to conclude that the Legislature clearly evinced its intent that G. L. c. 32B provide the exclusive manner in which the city may appropriate and expend funds for group health insurance for its employees (those individuals "in the service" of the city, G. L. c. 32B, § 2 [*d*]), and all persons whose claim to group benefits (paid for by the city) arises because of their relationship with a city employee, i.e., "dependents."[13] The Legislature has defined precisely those who may be included in the category of "dependents." Cities and other governmental units are not free to expand the category.

General Laws c. 32B is "a comprehensive statute empowering municipalities to provide group insurance (medical and certain other coverages) to their employees and their employees' dependents." *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706, 710 (1978). See *Kusy* v. *Millbury,* 417 Mass. 765, 768 (1994), citing *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Chatham,* 404 Mass. 365, 367 (1989). General Laws c. 32B is a "local option" statute: it does not take effect until a governmental unit accepts it. See *Kusy* v. *Millbury, supra* at 768 n.4. Once accepted, however, it provides the exclusive mechanisms by which and to whom the city may provide group health insurance. See G. L. c. 32B, § 15 (*b*); *Watertown Firefighters, Local 1347* v. *Watertown, supra* at 712. Section 15 (*b*) provides explicitly that the city may not "appropriate or expend public funds" for the payment of group health insurance premiums for its active or retired employees,

---

[13]"Group insurance" has been defined as insurance "where there is a close relationship between the certificate holder and the holder of the master policy — usually, but not always, that of employment . . . . Group insurance may then be considered the coverage of a number of individual persons by one comprehensive policy, with certificates as evidences of such coverage, usually for the primary purpose of protecting and providing for employees." 1 J.A. Appleman & J. Appleman, Insurance Law and Practice § 41, at 83 (rev. ed. 1981).

or their dependents, "unless such insurance is procured pursuant to the provisions of this chapter."[14]

The defendants argue that the limitation imposed by § 15 (*b*) applies only to those defined in the statute — employees and their spouses, children under nineteen years and certain children over nineteen years — leaving the city free to expend public funds to pay for group health insurance for other persons not mentioned in the statute. They view the requirements of G. L. c. 32B as a "floor," as opposed to a "ceiling." But the insurance plan at issue provides health coverage for named insureds (employees) and those who, because they are "dependent" on them, have an insurable interest through them.[15] Domestic partners and their dependents fall outside the statutory definition of those who may claim an insurable interest through the employee, and are therefore precluded from obtaining coverage.

The defendants' construction of § 15 is further belied by its legislative history. The Third Report of the Special Commission on Implementation of the Municipal Home Rule Amendment to the State Constitution (Home Rule Report), filed with the legislation introducing § 15, 1967 Senate Doc. 1174, begins by stating:

> "In the interest of further containing the cost of insurance programs, municipalities may not provide a level of benefits greater than that afforded by their county and the county may not exceed the State's level of benefits."

*Id.* at 2.[16] See *Kerrigan* v. *Boston*, 361 Mass. 24, 31 (1972) ("purpose and policy" of § 15 [*b*] is to contain cost of insurance programs so that "municipalities may not provide a level

---

[14]Section 15 (*b*) now provides other mechanisms by which a governmental unit may appropriate funds for group health insurance, see note 20, *infra*, none of which is at issue here.

[15]See 10 G. Couch, Insurance § 144:26 (3d ed. 1998) ("Policies of medical insurance generally cover the named insured, and dependents of the named insured. Although the assessments on a policy of group medical insurance are primarily the responsibility of the employer or other entity which purchased the policy, the insured under such a policy is the employee or group member").

[16]The report was issued by the Special Commission on implementation of the Municipal Home Rule Amendment to the State Constitution, an indication that the Legislature contemplated the limitations imposed by § 15 in the context of a governmental unit's power to act pursuant to its home rule authority. See Third Report of the Special Commission on Implementation of

of benefits greater than that afforded by their county and the county may not exceed the State's level of benefits"). We read the term "level of benefits" to include the definition of household members eligible for group health coverage through the employee. Health insurance benefits are an important component of an employee's compensation. See *Commonwealth* v. *Massachusetts Org. of State Eng'rs & Scientists*, 423 Mass. 667, 670 (1996). Whether a group health insurance plan covers a particular category of household members as "dependents" may be, and often is, as important to an employee as the risks that are covered.[17]

The Home Rule Report goes on to state that the legislation was "designed to clarify" that "Chapter 32B remains in effect as a *uniform* state-wide system for the purchase of group life and health insurance" and that "local governments not presently providing these benefits for their employees may only be allowed to do so in the future by acceptance of Chapter 32B" (emphasis added). 1967 Senate Doc. No. 1174 at 2. The report also states that the "purpose of this Chapter is to provide local governments with a volume of purchasing power sufficient to assure that their employees will receive the highest possible level of benefits at the lowest possible net cost." *Id.* at 4. To this end, says the report, the statute "provides for the *exclusive purchase* of group term insurance, the style of insurance affording this feature" (emphasis added). The report recognizes that municipalities are not required to provide life and health insurance for their employees, but, "if they desire to do so the intention is it be done only under the provisions of this Chapter." *Id.* To that end, St. 1967, c. 373, which inserted § 15 in G. L. c. 32B, is entitled "An Act providing that political subdivisions of the commonwealth shall not establish any system of group insurance for their employees except that provided by general laws."

Where the Legislature has used such explicit language prohibiting the city from providing group health insurance

---

the Municipal Home Rule Amendment to the State Constitution, 1967 Senate Doc. No. 1174.

[17]A party to an insurance contract (in the case of group health insurance, the employer) may negotiate with carriers to expand the definition of "dependents" to include, for example, children to an older age, individuals not resident in the insured's household, parents, or any other category of individuals who rely on the named insured for support and whom the named insured is obliged to support. See 10 G. Couch, Insurance, *supra* at § 144:27.

except as prescribed by the statute, and where the legislative history makes clear that it intended to do so, we conclude that there was an "express legislative intent to forbid local activity on the same subject," *Boston Gas Co.* v. *Newton,* 425 Mass. 697, 699 (1997), quoting *Boston Gas Co.* v. *Somerville,* 420 Mass. 702, 704 (1995), rendering the ordinance in "sharp conflict" with State legislation. *School Comm. of Boston* v. *Boston, supra.*[18]

## B

The city nevertheless urges us to conclude that the Boston ordinance is not inconsistent with State law because the purpose of G. L. c. 32B can be well served in the face of the ordinance, and that State and local law can "coexist." It argues that, by extending health care insurance benefits to a greater number of household members, the city will increase the volume of its purchasing power and assure that its employees "will receive the highest possible level of benefits at the lowest possible cost." See 1967 Senate Doc. No. 1174 at 4. This is, indeed,

---

[18]Both plaintiffs and defendants rely on *Kerrigan* v. *Boston,* 361 Mass. 24 (1972), and *Kusy* v. *Millbury,* 417 Mass. 765 (1994), to support their respective interpretations of the Legislature's intent. In *Kerrigan* v. *Boston, supra* at 29, we held that weekly accident and sickness benefits did not come within the phrase " 'hospital, surgical, medical, dental, and other health insurance' as used in c. 32B," and that contributions thereto were not prohibited by § 15. The defendants argue that, analogously, domestic partners and their dependents are not included within the statutory definition of dependents and that therefore § 15 does not prohibit providing them with health insurance benefits. Here, however, the type of benefits the city seeks to provide — group health insurance benefits — triggers the operation of the statute. Once the city seeks to provide those benefits, it must do so according to the provisions of G. L. c. 32B. Should the city choose to provide some other benefit not specified in G. L. c. 32B, as was the case in *Kerrigan* v. *Boston, supra,* the provisions of G. L. c. 32B would not apply.

In *Kusy* v. *Millbury, supra* at 767, 770, we upheld a local bylaw authorizing the town to pay for nongroup health insurance coverage for any employee or retiree not eligible for a health maintenance organization. The bylaw became necessary when it became impossible for the town to continue providing group insurance to a retiree because he had moved out of the group coverage area. We noted in that case that the bylaw did not violate § 15 "because the by-law does not concern *group* insurance" (emphasis in original). *Id.* at 770 n.8. For the same reason that we indicated in *Kerrigan* v. *Boston, supra,* the statute was not triggered. We express no view on whether the mayor could authorize the city to pay for nongroup health insurance benefits for registered domestic partners of city employees.

among the purposes of the statute. Equally important to the Legislature, however, was its objective that the plans of group life and health insurance adopted by each governmental unit be uniform. An overriding concern was to effectuate cost containment by preventing one governmental unit from providing different (and potentially more costly) levels of benefits than another. See Home Rule Third Report, 1967 Senate Doc. No. 1174.[19] The legislation accordingly provides that municipalities must achieve cost containment by adhering exclusively to the provisions of G. L. c. 32B, including § 2 (*b*)'s limitation on covered dependents.[20] Uniformity of coverage (persons and risks) was one mechanism selected by the Legislature to control escalating cost disparities among governmental units. That purpose would not be served if each could expand the definition of covered dependents.

When the Legislature enacted G. L. c. 32B in 1955, St. 1955, c. 760, it defined the term "[d]ependents" in a manner consistent with the then-prevalent view of persons for whom the benefi-

[19]Thirty years later, cities and towns remain concerned about the escalating costs of providing group health insurance to their employees. See, e.g., *Ludlow Educ. Ass'n* v. *Ludlow*, 31 Mass. App. Ct. 110, 113 (1991). Expanding group health coverage to include a wide category of household dependents (parents, adult children, or domestic partners) may increase the total cost of coverage to an employer.

[20]GLAD argues that any original goal of uniformity has been eroded by subsequent amendments to § 15. Section 15, as originally enacted, provided that no appropriations for premiums could be made "unless such insurance is procured pursuant to the provisions of this chapter." St. 1967, c. 373, § 2. In 1988, the Legislature rewrote § 15 to add "or unless such payments are made, pursuant to an agreement of an employer and an employee organization, to a health and welfare trust fund agreement for the purposes of (i) providing health benefits not otherwise provided to such employees by said governmental unit under the provisions of this chapter or (ii) paying contributions by said governmental unit toward premium costs or rates in excess of the level of such premium cost or rate contributions otherwise provided for under the provisions of this chapter." St. 1988, c. 82. In 1993, the Legislature added to the preceding sentence "or (iii) providing health benefits required under the provision of this chapter." St. 1993, c. 110, § 102. In 1996, the Legislature also provided that appropriations for health benefits could be made where "authorized by section five of chapter forty." St. 1996, c. 288, § 1. The Legislature's allowance for appropriations pursuant to mechanisms other than the provisions of G. L. c. 32B does not change the fact that these appropriations still must remain consistent with G. L. c. 32B. Such appropriations are consistent because they are authorized by § 15 (*b*). Any "exceptions," i.e., any change regarding the provision of insurance to employees of governmental units, must be made by the Legislature.

ciary (the employee) likely had an obligation to provide support, and who reasonably could be viewed as relying on the beneficiary for support. See, e.g., Report of the Special Commission on Insurance, 1954 Senate Doc. No. 640 at 13 (term "dependents" and "wives and children" used interchangeably). The Legislature's definition of dependent in this context has changed but once, in 1960, to include certain children over the age of nineteen years. St. 1960, c. 214, § 1. We recognize that the category of covered dependents of city employees, as defined by the Legislature in 1955 and 1960, no longer fully reflects all household members for whom city employees are likely to have continuing obligations to provide support. A "family" may no longer be constituted simply of a wage-earning father, his dependent wife, and the couple's children.[21] We also recognize that the categories of household members who may rely on a wage earner for support have broadened over time. An increasing number of parents, for example, rely on their children for support, see generally Neal, Chapman, Ingersoll-Dayton, & Emlen, Balancing Work and Caregiving for Children, Adults, and Elders 144 (1993); Geriatric Cases: The Aging of America Is Making 'Elder Care' A Big Workplace Issue, Wall St. J., Feb. 16, 1994, at A1, while many more grandchildren live with and rely on their grandparents. More Grandparents Return to Parenting, Boston Sunday Globe, Sept. 13, 1998, at 17.[22] Adjustments in the legislation to reflect these new social and economic reali-

---

[21]According to the United States Bureau of the Census, the number of "unmarried-couple households" (opposite sex couples only) nationwide has grown from 439,000 in 1960 to 4,236,000 in 1998. Table AD-2, Unmarried-Couple Households, by Presence of Children: 1960 to Present. Of those 1998 households, 1,520,000 (35.88%) have children under fifteen years of age. *Id.* In Massachusetts, 1990 United States Census Bureau data indicate that unmarried-partner households comprised 3.5% of all households, and, of those unmarried-partner households, 93.41% were opposite sex partner and 6.59% were same-sex partner households. Unmarried-Partner Households, By State, 1990 Decennial Census-Summary Tape File 4 (1993).

[22]The Legislature has defined "dependents" more broadly in other contexts. For example, G. L. c. 32A provides group insurance for employees of the Commonwealth and defines "dependents" to include "parents of an employee . . . who are dependent upon him for over one half of their annual maintenance and support." G. L. c. 32A, § 2 (*d*). Such insurance is provided without contribution from the Commonwealth. *Id.* General Laws c. 175, § 108(3), sets out the requirements for the contents of health insurance policies in the Commonwealth, and provides that such policies may insure, in addition to spouses and certain dependent children, "any other person dependent upon the policyholder."

ties must come from the Legislature, whether it does so by expanding the statutory definition of "dependent" or by authorizing governmental units to define for themselves the term "dependent."[23] Our decision is mandated only because, in the context of group health insurance provided by governmental units for their employees, the Legislature has defined precisely the scope of the term dependent to exclude all but spouses, unmarried children under nineteen years of age, and older children in limited circumstances. G. L. c. 32B, § 2 (*b*). Had the mayor sought to extend group health insurance benefits to other categories of household member beyond those defined by the Legislature, our conclusion would be the same. We recognize that some household members of some of Boston's employees may be without a critical social necessity, health insurance. That is a reality that must be addressed by the Legislature.

## C

The mayor's executive order extending health insurance benefits to Boston employees' domestic partners and their dependents is inconsistent with G. L. c. 32B, §§ 2 (*b*) and 15 (*b*), thereby violating the Home Rule Amendment, art. 89, § 6, of the Amendments to the Massachusetts Constitution, and the Home Rule Procedures Act, G. L. c. 43B, § 13. The judge's order enjoining the implementation of the executive order is affirmed.

Justice Fried participated in the deliberation on this case, but resigned before the opinion was issued.

---

[23]In *Opinions of the Justices*, 427 Mass. 1211, 1214-1216 (1998), six Justices concluded that the Legislature properly could delegate to the city of Boston the authority to define the terms "domestic partners" and their "dependents" for the purpose of extending health benefit coverage pursuant to G. L. c. 23B.